IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN M. MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 7:12CV5009 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | MEMORANDUM OPINION |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the appeal of plaintiff, John Martinez ("Martinez"), of a final decision by the Commissioner of the Social Security Administration denying Martinez's application for disability benefits. The Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by the substantial evidence on the record.

**PROCEDURAL BACKGROUND**

Martinez filed applications for disability insurance benefits and supplemental security income and alleged disability beginning December 31, 2008 (Tr. 17). The Social Security Administration denied these applications on May 27, 2009, and again on September 14, 2009 (*Id.*). After the ALJ hearing on June 16, 2011, the ALJ issued an unfavorable opinion on July 29, 2010 (Tr. 14). The Appeals Council then denied Martinez's request for review (Filing No. 1, at 2). The Court will review the ALJ's

decision, which stands as the Commissioner's final decision (*Id.*).

## FACTUAL BACKGROUND

In relevant part, Martinez is a thirty-nine-year-old man with a general equivalency diploma (Tr. 173, 366).  Martinez has past work experience as an auto dealer, construction worker, livestock attendant, painter, tractor operator, and tire repairer (Tr. 188, 206, 259, 262).  Martinez alleges disability due to neuropathy, myopathy, thyroid problems, hypertension, chronic pain, depression, diabetes, and "muscle problems" beginning December 31, 2008, at age thirty-four.  Tr. 145, 155, 187, 198.

In November 2008, Martinez was involved in a motor vehicle accident (Tr. 312).  At the hospital, Martinez complained of neck and shoulder pain (Tr. 313).  Upon examination, Martinez had tenderness and pain in his neck with movement, normal range of motion, no tenderness in his back, and "good grip and hand sensation" (Tr. 311-12).  A magnetic resonance imaging ("MRI") scan of his back showed disc protrusion in his middle back but no significant cervical spinal abnormalities (Tr. 331, 335).  The examining physician assessed cervical strain and prescribed oxycodone for Martinez's pain (Tr. 313-14).

Over the course of his claimed disability, Martinez had several examinations.  No less than ten doctors have examined Martinez or reviewed his file.  Five doctors have examined

Martinez at his own behest, including the following: Drs. José Cardenas, Jeffrey Brittan, Pariwat Thaisetthawatkul, Omar Jimenez, and Burt McKeag. Generally, Martinez complained of pain, particularly in the back due to mildly exaggerated thoracic kyphosis, slight thoracic curvature, very mild degenerative changes, and mild disc protrusion with no significant effacement of the spinal cord or stenosis; Martinez also experienced a full range of movement except for his left shoulder and he responded well to painkillers (January 2009, Tr. 298-301; February 2009, Tr. 272, 302; March 2009, Tr. 275-77; April 10, 2009, Tr. 354-55; April 13, 2009, Tr. 357-59; June 2009, Tr. 411, 414; August 2009, Tr. 430-31; September 2009, Tr. 436; September-December 2009, Tr. 433-55). Besides this consistent pattern, other assessments include the following.

In 2009, doctors twice instructed Martinez to refrain from work for short periods of time: once for three days and once for two days (Tr. 273-74, 277). Plaintiff's physician, Dr. José Cardenas, noted that Martinez's electromyography results showed evidence of diffuse sensorimotor axonal polyneuropathy and possible lower cervical radiculopathy (Tr. 359, 524-27).

In June 2009, Martinez saw his treating physician, Dr. Jeffrey Brittan, for treatment of fibromyalgia and sleep apnea (Tr. 397). Dr. Brittan ordered further sleep testing and prescribed additional pain medication (Tr. 397). In September

2009, another one of Plaintiff's physicians, Dr. Pariwat Thaisetthawatkul assessed peripheral neuropathy and nocturnal leg movement (Tr. 438).

Also in September 2009, Martinez visited another one of his physicians, Dr. Omar Jimenez, who noted that Martinez had "a very small disc protrusion and it is unlikely it is resulting in [Martinez's] symptoms" (Tr. 430).  He determined that Martinez suffered from thoracic back pain that was most likely related to muscle strain and obesity though Dr. Jimenez did not recommend surgery (Tr. 430).

Martinez also saw another doctor, Dr. Burt McKeag.  Dr. McKeag assessed neuropathic pain, fibromyalgia, lumbosacral spondylosis, morbid obesity, thoracic disc displacement without myelopathy, lumbago, brachial neuritis, and cervicalgia (Tr. 459, 463, 465, 470-71, 474, 477, 479, 483, 493, 499, 503, 522).  On March 2, 2011, Dr. McKeag noted that he discontinued Martinez's oxycodone for the following reasons:  Dr. McKeag did not believe the drugs were helping Martinez; Martinez had two urine drug screens that were negative for oxycodone even though he had a prescription for the drug; Dr. McKeag had concerns of diversion; and Martinez reported that he "misplaced" his pain medications in his nephew's car in a non-labeled container resulting in a police inquiry (Tr. 458, 468).  Dr. McKeag noted that Martinez became

angry and frustrated about having his medication stopped (Tr. 458).

From January 2010 to February 2011, Martinez saw Dr. Brittan for general health care (Tr. 442-52).  He discussed his weight problems; reported pain, anxiety, and insomnia; and requested pain medication (Tr. 442-52).

After these diagnoses by Martinez's doctors, the state agency requested the following five doctors review Martinez's claims:  Drs. Lisa Jones, Linda Schmechel, Rebecca Brayman, Glen Knosp, and James Bane.

On May 18, 2009, Dr. Jones examined Martinez (Tr. 364-70).  Martinez reported that he received substance abuse treatment (Tr. 367).  Martinez further reported that his inability to work and provide for his family caused him to have some panic symptoms, feel anxious, stressed out, and down about himself (Tr. 367-68).  Dr. Jones noted that Martinez had no restrictions in his activities of daily living; no difficulties maintaining social functioning; and no recurrent episodes of deterioration when stressed (Tr. 368).  Dr. Jones assessed adjustment disorder with mixed anxiety and depressed mood (Tr. 369).  She assigned a global assessment of functioning (GAF) score of 75 and concluded that Martinez's "prognosis is good in terms of mental health issues" (Tr. 369).

On May 20, 2009, Dr. Schmechel reviewed Martinez's medical records and completed a psychiatric review technique form at the request of the state agency (Tr. 371-85). Dr. Schmechel found that Martinez had mild limitations in maintaining concentration, persistence or pace, but no limitations in activities of daily living and maintaining social functioning (Tr. 381). Dr. Schmechel also found that Martinez's "mental condition would not severely limit his work abilities" (Tr. 383).

In September 2009, Dr. Brayman also completed a psychiatric review technique form (Tr. 426-27). Dr. Brayman acknowledged that Martinez was diagnosed with adjustment disorder, but noted that his mental health condition was non-severe and would not prevent him from performing work activities (Tr. 426).

Dr. Knosp reviewed Martinez's medical records and completed a physical RFC assessment form at the request of the state agency (Tr. 386-94). Dr. Knosp opined that Martinez could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk or sit for about 6 hours in an 8-hour workday; and push or pull without limitation (Tr. 387). Dr. Knosp summarized the medical evidence and determined that Martinez's physical examinations did not support his claims of disabling physical impairments (Tr. 393).

On September 10, 2009, Dr. Bane reviewed Martinez's medical records and completed a physical RFC assessment form at the request of the state agency (Tr. 416-25). Dr. Bane reached the same conclusion about Martinez's RFC (Tr. 417). Dr. Bane determined Martinez did not meet or equal the relevant listings (Tr. 425). Dr. Bane noted that Martinez's claims of myopathy and diabetes were not supported by diagnostic or laboratory testing results (Tr. 425). He also found that Martinez's alleged hypertension and thyroid problems were controlled with medication (Tr. 425). Ultimately, Dr. Bane determined the allegations of disabling physical impairments were not fully credible and that Martinez could perform work activity consistent with his RFC finding (Tr. 425).

On January 6, 2010, Martinez's primary physician, Dr. Brittan completed a questionnaire form regarding Martinez (Tr. 528-29). Dr. Brittan indicated that Martinez had peripheral neuropathy and generalized weakness and that his prognosis was "poor" (Tr. 528). He also noted that Martinez's "weakness" limited his daily activities and that his ability to work was limited by left shoulder pain (Tr. 529). Dr. Brittan opined that Martinez should not bend, twist, or lift more than 5 to 10 pounds (Tr. 529).

In May 2009, Martinez completed a pain questionnaire form (Tr. 200-05). Martinez reported pain in his back, feet,

legs, and hands (Tr. 202).  He also reported problems sleeping (Tr. 200).  Martinez took medication for his symptoms and he stated the medication "helps a little," "kind of works," and "relieves some pain" (Tr. 202-03).  Martinez provided for his own personal care but could not cook or perform household chores due to pain in his hands, feet, and legs (Tr. 200).  Martinez drove a car, watched television, and attended his children's soccer games (Tr. 200-01).  Martinez could stand for 15-20 minutes at a time, sit for an hour to an hour and a half, walk half a block, and climb three stairs at a time before experiencing pain (Tr. 201).

## ADMINISTRATIVE HEARING

On January 6, 2010, the ALJ and Martinez's attorney questioned Martinez regarding his conditions.  Martinez had three treating physicians:  Drs. Brittan, Cardenas, and McKeag (Tr. 46).  Martinez took methadone, Lyrica, tramadol, CPAP, stool softener, and Tums (Tr. 46-47).  Martinez also elevated his legs and used wraps or heating/cooling pads to manage his pain (Tr. 52-53).  Martinez described his average daily activities which included resting, sitting, interacting with his children, walking a little bit, watching television, reading, and sometimes cooking, cleaning, laundry, and shopping (Tr. 48-51).  Martinez also testified that he had difficulties performing tasks with his hands, such as holding a bar of soap, reeling in fish, and handling screwdrivers (Tr. 52).  Martinez then testified that he

-8-

napped three times a day and experienced approximately five "bad" days a month where he could not get out of bed (Tr. 57, 54). Martinez also testified that he was preparing to undergo lap band surgery to hopefully relieve some symptoms from which he suffered (Tr. 56-57).

Then, the ALJ called the vocational expert ("VE"), Hassert, to respond to three hypothetical questions. First, the ALJ asked the VE what jobs were possible for a hypothetical person of Martinez's age, education, and work experience, who could perform "light exertional work," occasionally twist, bend, stoop, kneel, crouch, crawl, but could not climb or reach overhead, and could handle frequent -- though not constant -- simple routine, repetitive tasks (Tr. 60). The VE responded that this hypothetical person could work as a photo counter clerk,[1] storage rental clerk,[2] or a sales attendant clerk[3] (Tr. 61).

Second, the ALJ modified the first hypothetical to exclude the ability to twist or to bend (Tr. 61). The VE testified that such a person could not work as a storage rental clerk or a sales attendant clerk; however, such a person could

---

[1] Dictionary of Occupational Titles ("DOT") code 249.366-010; 300 Nebraska ("NE") jobs; 51,200 national ("US") jobs.

[2] DOT code 295.367-026; 500 NE jobs; 147,000 US jobs.

[3] DOT code 299.677-010; 3,000 NE jobs; 79,600 US jobs.

-9-

work as a photo counter clerk, a photocopy machine operator,[4] or a recreation aide[5] (Tr. 60-61).

Third, the ALJ asked the VE what jobs were possible for a hypothetical person of Martinez's age, education, and work experience, who could perform "sedentary work," occasionally kneel, crouch, crawl, but could not climb, twist, bend, or reach overhead, and could handle frequent -- though not constant -- simple routine, receptive tasks (Tr. 62). The VE responded that this hypothetical person could work as a document preparer,[6] eyeglass frame polisher,[7] or ampule sealer[8] (Tr. 62-63).

Following the ALJ's hypothetical questions, Martinez's attorney asked four hypothetical questions. First, the attorney modified the ALJ's third hypothetical and changed "frequent handling" to "occasional handling" (Tr. 63). The VE responded that this hypothetical person could work as a surveillance

---

[4]   DOT code 207.685-104; 160 NE jobs; 19,900 US jobs.

[5]   DOT code 195.367-030; 200 NE jobs; 38,500 US jobs.

[6]   DOT code 249.587-018; 160 NE jobs; 30,000 US jobs.

[7]   DOT code 713.684-038; 116 NE jobs; 28,600 US jobs.

[8]   DOT code 559.687-014; 300 NE jobs; 27,400 US jobs.

systems monitor,[9] credit checker,[10] or an elections volunteer[11] (Tr. 64).

Second, the attorney asked the VE whether employers typically supply a place to lie down during breaks for hypothetical persons of Martinez's age, education, and work experience (Tr. 64). The VE responded "no."

Third, the attorney asked the VE what effect a hypothetical person of Martinez's age, education, and work experience would experience if the he required one or two extra breaks per day (Tr. 64). The VE replied that the work available to such a hypothetical person would not allow additional breaks.

Fourth, the attorney asked the VE what effects a hypothetical person of Martinez's age, education, and work experience would experience if he required a work station where he could elevate his feet to waist level for 30 minutes per day (Tr. 65). The VE responded that, if such a person could not elevate their legs during breaks, elevating legs at the work station was typically unacceptable.

---

[9] DOT code 379.367-010; 100 NE jobs; 21,200 US jobs.

[10] DOT code 237.367-014; 300 NE jobs; 14,000 US jobs.

[11] Although the VE failed to offer DOT information, she mentioned that this position is typically volunteer based.

**THE ALJ'S FINDINGS**

The ALJ found that Martinez had not engaged in substantial gainful employment since December 31, 2008 (Tr. 19). The ALJ concluded Martinez had the following impairments: fibromyalgia, morbid obesity, cervicalgia, thoracic disc displacement with myelopathy, lumbosacral spondylosis, brachial neuritis, sensory axonal polyneuropathy, and obstructive sleep apnea (*Id.*). She did not conclude, however, that Martinez had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ determined that Martinez maintained a "light work" residual functional capacity ("RFC") and could have stood, sat, or walked for six out of eight hours a day, occasionally performed postural activities, performed simple, routine, and repetitive work, and could not reach overhead or climb (Tr. 22). The ALJ determined Martinez could not have performed his previous work (Tr. 26). The ALJ also determined that Martinez could have performed work as a photo counter clerk, storage rental clerk, or a sales attendant clerk (Tr. 27). Consequently, the ALJ found that Martinez was not disabled from December 31, 2008, onward (Tr. 28).

**STANDARD OF REVIEW**

In reviewing a decision to deny disability benefits, the district court's role under 42 U.S.C. § 405(g) is limited to

determining whether substantial evidence in the record as a whole supports the Commissioner's decision. *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits. *Id.* (quotations and citations omitted). Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## LAW & ANALYSIS

Martinez's argument rests on a sole contention, that the substantial evidence does not support the ALJ's determination of Martinez's RFC because the ALJ improperly used daily activities to discount Martinez's credibility. Filing No. 17, at 4-8. The Court disagrees and will affirm the ALJ decision.

In making an RFC determination, the ALJ is required to consider the "claimant's own descriptions of his limitations" unless the ALJ makes a proper credibility determination and finds that a Martinez's statements regarding his own pain are not credible. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001). To make such a finding, an ALJ must give full

consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: (1) claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1986).

Consequently, an ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints.  *Lowe v. Apfel*, 226 F.3d 969, 971–72 (8th Cir. 2000).  The ALJ, however, is "not required to discuss methodically each *Polaski* consideration."  *Id.* at 972.  Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, "even if every factor is not discussed in depth.").

On page 25 of the transcript, the paragraph in question states the following in its entirety:

> After considering the evidence of the record, I find that the claimant's medically determinable impairments could reasonably be

> expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally not fully credible. As stated above, the claimant alleges he is unable to work. However, the record establishes that the claimant is capable of working. The claimant has worked since his alleged onset date and, although his work activity did not rise to the substantial gainful activity level, it demonstrates he is able to work. The claimant is also able to engage in a wide range of activities of daily living that could translate into performing a job including using a computer, some housework, and cooking. While the claimant does not have consistent work history prior to 2009, this is only one factor that I considered (Exhibit 7D). Therefore, the claimant is capable of performing basic work activities consistent with the residual functional capacity stated above.

Tr. 24. In this paragraph, the ALJ expressly determines the credibility of Martinez's subjective statements in regards to Martinez's RFC. This determination is required by law and the daily activities of the claimant is a factor for the ALJ to consider. *Polaski*, 739 F.2d at 1322.

In addition, numerous examples in the record offer good reason for the ALJ's disregard of Martinez's subjective statements regarding the severity of his conditions. These reasons include lack of objective medical evidence, examinations

-15-

which illustrated Martinez was not as severely impaired as he subjectively alleged, Martinez's work during his alleged disability, and Martinez's failure to abide by his treatments.

First, the lack of objective medical evidence was a factor in the ALJ's determination. Tr. 25. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is one factor in evaluating the credibility of the complaints. *Polaski*, 739 F.2d at 1322.

Second, several examinations illustrated that Martinez's impairments were not as severe as he alleged. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id.* Specifically, several examinations reported normal range of motion in Martinez's extremities, normal muscle strength and tone, normal reflexes, equal hand grip, and normal gait. Tr. 273, 276-77, 300, 310-11, 354, 437-38. In two examinations, doctors recommend only two or three days rest from work, which implies an ability to return to work. Tr. 273-74, 277. Several diagnostic tests revealed no significant abnormalities in Martinez's back. Tr. 312, 327-31, 335, 532-34. One diagnostic test revealed a disc protrusion with "no significant effacement of the spinal cord" which did "not explain patient's symptoms." Tr. 430. Finally, three doctors directly contradicted Martinez's subjective

statements of pain, including one doctor who directly challenged Martinez's claims as not credible.  Tr. 393, 425, 426.

Third, the ALJ considered Martinez's ability to hold employment after his onset date.  Tr. 25.  The ALJ may consider the ability of a claimant to work after the alleged onset of disability when determining the credibility of a claimant's subjective claims of pain.  *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (citing *Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992)) (sustaining the ALJ's determination that the claimant's claims of pain were incredible on the basis that claimant continued to work after her alleged onset date).  Martinez continued to work full-time for five months after the onset of his alleged disability.  Tr. 259.

Fourth, the record illustrates that Martinez did not abide by his doctors' prescribed treatments for his pain.  Non-compliance with treatment is a proper consideration in determining the credibility of a claimant's subjective claims of pain.  *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).  In this case, Martinez would run out of drugs prematurely, he failed to take his prescribed oxycodone at least during the time period in which he was screened, and he failed to appear for nerve conduction study.  Tr. 26, 411, 414, 435, 458, 468.  Also of consideration are Martinez's visits to one of his physicians, Dr.

-17-

McKeag, in 2011 which indicated noncompliance with narcotic medication and its instructions. See Tr. 458-70.

## CONCLUSION

The substantial evidence in the record as a whole illustrates that the ALJ did not improperly discount Martinez's subjective claims of the persistency and severity of pain. The ALJ's examination of Martinez's daily activities was a necessary and proper factor in determining the credibility of Martinez's subjective complaints. Furthermore, numerous other considerations in the record as a whole support the ALJ's conclusion pursuant to *Polaski*. The Court will affirm the denial of benefits. See *Dunahoo*, 241 F.3d at 1038, *Juszczyk*, 542 F.3d at 631. A separate order will be entered in accordance with this memorandum opinion.

DATED this 1st day of October, 2013.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court